CAPITOL
COURT REPORTING
Court Reporting • Tape Transcription

# Condensed Transcript of the Testimony of

# William Burelle

Taken on December 2, 2005

William Burelle v. Quebecor World Pawtucket

225 Reservoir Avenue, Providence, RI 02907 p: 401.453.1005 f: 401.453.1009
www.capitolcourtreporting.com

A. Well, he had lost an AOL account possibly nine months prior to that, yet they gave him a second opportunity to continue on to try to develop new accounts, and when he did it, then obviously -- obviously it happened, and that's why I felt the same way, that even though I lost a major account, they would still allow me to continue, but then I made the comment, "Unless age has something to do with it."
**Q. I understand that, sir, but let's focus on Williamson. Do you know how many accounts Mr. Williamson had at the time he lost AOL?**
A. No.
**Q. Do you have a guesstimate as to how many accounts he had?**
A. If I could look at the files here, I could tell you.
**Q. You don't trust those files, remember?**
A. No, I don't. No, I don't.
**Q. Okay. So again your last line says, "I wonder whether age has anything to do with it."**
A. Yes.
**Q. Again, what do you mean by that, sir?**
A. Referring to the previous statement about, "If my account goes south," that Quebecor probably does



not want to support a salesman starting over. They did with Dave Williamson because he was in his thirties. Would they support a man starting over in late fifties, early sixties? That's what I'm talking about. Age would have to do as to whether they would allow someone to start over.
**Q. And, again, you didn't know what Dave Williamson's income was, did you?**
A. No, I didn't.
**Q. And you did know that Mr. Williamson was, in fact, terminated due to poor sales before you were terminated?**
A. Yes.
MR. DIORIO: Mark his as U.
(DEFENDANT'S EXHIBIT U MARKED FOR IDENTIFICATION)
(DOCUMENT HANDED TO WITNESS)
**Q. Okay. I'm showing you document U, which is an e-mail you wrote dated March 7th of '02, correct, sir?**
A. Yes.
**Q. And let me find what I wanted to ask you about. Okay. This e-mail also involves the February 27, 2002 incident, correct, sir?**
A. Correct.



**Q. Okay. The remainder of the e-mail talks about other people at Packaging Graphics discussing the fact that you should have reported this to human resources.**
A. Right.
**Q. Correct?**
A. Correct.
**Q. And notwithstanding the advice you were getting from your co-workers, you chose not to.**
A. Yes.
**Q. At least at that point you chose not to.**
A. Yes.
**Q. The next to the last paragraph I'd like you to focus on. You state, quote, "I am sure that Ernie would take the appropriate measures at a later date to assure that he will not suffer from this episode." What do you mean by that, sir?**
A. That in some way he would retaliate against me to make me look bad, so if I had ever come forth and complained, he would then say, "Oh, he's just complaining because look at what he's been doing," you know, he would cover his tracks.
**Q. Have you ever seen Ernie, as you say, cover his tracks in the past before this date?**
A. I don't recall. I don't believe I can answer



that question truthfully. I don't know.
**Q. Well, why would you think then on March 7th of 2002 that Ernie would take appropriate measures so that he would not suffer?**
A. Because of the severity of the incident.
**Q. By the way, did you believe that age had anything to do with the incident that took place on February 27th of 2002?**
A. No.
**Q. Okay. I note your last sentence says, "I may still consider reporting it at a later date." Is this what you were talking about earlier, that you were having these --**
A. Yes.
**Q. -- I guess you called them flashbacks or something?**
A. Right.
**Q. And this is part -- this is one of them when you wrote it?**
A. It would be watered down.
**Q. And that's what ultimately you were told by Victor, too --**
A. Yes.
**Q. -- that by the time you did speak to him --**
A. Yes.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **WILLIAM J. BURELLE,** <br><br> **Plaintiff,** <br><br> **- against -** <br><br> **QUEBECOR WORLD PAWTUCKET f/k/a QUEBECOR WORLD PACKAGING GRAPHICS; QUEBECOR WORLD PRINTING (USA) INC.; and ERNEST MASSE,** <br><br> **Defendants.** | : | **C.A. No.: 04-414 S** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within Declaration Of Anthony J. DiOrio, Esq. has been served by mailing a copy of the same, via Federal Express, this 3rd day of April 2006, to:

Melissa Horne, Esq.
Wingrad, Shine & Zacks, P.C.
123 Dyer Street
Providence, Rhode Island 02903
*Attorney for Plaintiff*

Joseph J. Altieri, Esq.
Joseph J. Altieri, Ltd.
301 Metro Center Blvd., Suite 102
Warwick, Rhode Island 02886
*Attorney for Defendant Masse*

Anthony J. DiOrio, Esq.