LEXSEE 1994 US DIST LEXIS 13797

# HARVEY BLOOM, Plaintiff, v. AGFA CORPORATION, Defendant.

**C.A. NO. 90-10856-ZRK**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

***1994 U.S. Dist. LEXIS 13797***

**August 10, 1994, Decided**

**COUNSEL:** [*1] For HARVEY J. BLOOM, Plaintiff: John F. Welsh, III, Testa, Hurwitz & Thibeault, Boston, MA. Donald L. Conn, Jr., Conn, Austin, Conn & Senior, Stoneham, MA. Donald L. Conn, Jr., Conn, Austin, Conn & Senior, Stoneham, MA.

For AGFA CORP., Compugraphic Division, Defendant: Barbara A. Fain, Jason Berger, Testa, Hurwitz & Thibeault, Boston, MA.

**JUDGES:** Karol

**OPINIONBY:** ZACHARY R. KAROL

**OPINION:**

**MEMORANDUM AND ORDER REGARDING DOCKET NOS. 46, 48, and 49**

**KAROL, U.S.M.J.**

**August 10, 1994**

## I. INTRODUCTION

Plaintiff, Harvey J. Bloom, commenced this age discrimination suit in Massachusetts Superior Court under Mass. Gen. L. ch. 151B. Defendant Agfa Corporation, AGFA Compugraphic Division ("Agfa"), removed the case to this court on the basis of diversity of citizenship. See *28 U.S.C. § § 1441*(a), 1332. The case proceeded in normal fashion until it was called for jury trial on May 9, 1994. Immediately before the jury was to have been empaneled, Agfa moved in limine to exclude plaintiff's evidence that 60% of the management-level employees who had been laid off by Agfa as part of a reduction in its work force, including plaintiff, were at least forty years old. Following [*2] argument, and for reasons discussed below, the motion in limine was granted. At that point, Agfa moved pursuant to *Fed. R. Civ. P. 50 (a)* for judgment as a matter of law, on the ground that the remaining evidence which plaintiff was planning to offer on the issue of age animus was clearly insufficient to establish that essential element of his claim. While Bloom had strenuously objected to the granting of Agfa's motion in limine, he did not (and still does not) dispute that, without the excluded statistical evidence, his remaining evidence of age animus was insufficient to support his claim. The parties agreed with the court that it would be wasteful to proceed with the empanelment and opening statements if it was already clear that, without the excluded statistical evidence, an essential element of Bloom's claim could not be established. The parties further agreed, therefore, that rather than proceeding with the futile act of empaneling a jury, Agfa's motion for judgment as a matter of law would be deemed to have been made and granted upon the close of the opening statement that Bloom would have made, if the jury had been empaneled and Bloom had made an opening statement which omitted [*3] any reference to the excluded evidence. n1 Bloom was then given until May 20, 1994 (a period of time that he said would be adequate) to file a motion for reconsideration of the court's decision to exclude the statistical evidence, without which evidence his claim clearly could not proceed. Bloom has now filed his motion for reconsideration (Docket # 46), along with a belated discovery motion (Docket # 49) and motion for continuance of trial (Docket # 48). For the reasons set forth below, Bloom's motions are denied, the statistical evidence shall be excluded, and judgment shall enter in Agfa's favor.

n1 The effect of all this was, with the concurrence of the parties, to treat Agfa's pre-empanelment motion under Rule 50(a) for judgment as a matter of law as an oral motion under Rule 56 for summary judgment.

## II. DISCUSSION

A. Facts

It is undisputed that Bloom was born on February 18, 1938, and that he was first hired as a Senior Staff Engineer by Agfa's predecessor, Compugraphic Corporation, in 1978. By [*4] the Spring of 1987, Bloom had been promoted to Manager of Quality Technical Services. Pursuant to a series of mergers and corporate reorganizations, Compugraphic Corporation became Agfa Corporation in late 1988, and Bloom initially retained his title as Manager of Quality Technical Services. In early 1989, however, Bloom's position was eliminated, and Bloom was offered and accepted the opportunity to transfer to Agfa's Field Service Division as Manager of Customer and Technical Training. In September 1989, this position was also eliminated, and Bloom, then fifty-one years old, was laid off. n2 The responsibilities of his former position were redistributed to other employees and departments, primarily regional offices. Agfa does not dispute that, during his entire tenure with Agfa and its predecessor, Bloom's performance was excellent, his work met legitimate expectations, and no dissatisfaction with his performance played any role in the decision to let him go. In fact, Bloom's supervisor, Senior Vice President of Field Services Russell Spencer, contacted the Vice President of Engineering and the Vice President of Operations to recommend Bloom for a position in one of their departments, [*5] but they had no positions to offer because their units were also being reduced.

n2 At the time of his layoff, Bloom was earning approximately $ 87,000 per year. His severance package included six months pay and health and dental coverage. He remained unemployed for approximately one year, before accepting a position with Millipore Corporation at an annual salary of $ 72,000.

To put Bloom's layoff in context, in the two years which preceded it, Agfa's workforce was reduced pursuant to a company-wide restructuring from approximately 5,000 employees to fewer than 4,000. By 1990, several hundred positions within Field Services alone had been eliminated. On the same day that Bloom lost his job, sixteen other Field Services employees were laid off. It is against this background that Bloom claims that the sole reason for his termination was his age.

Bloom concedes that he can provide no anecdotal evidence to support his claim that age played a part in the decision to let him go. Other than the conceded fact that he was an [*6] exemplary employee who was well qualified to fill other remaining positions within the company and his claim that the responsibilities of his former position were redistributed to existing, presumably younger, employees, Bloom's only evidence of age discrimination was that forty-five of the seventy-five management level employees who were terminated during the relevant period, or 60%, were at least forty years of age. n3 This is the evidence that was the subject of Agfa's motion in limine and is the foundation -- indeed, the entire edifice -- of Bloom's case.

n3 In Plaintiff's Memorandum in Support of Motion for Reconsideration (Docket # 47), Bloom asserts that forty-five is "approximately . . . 62%" of seventy-five. In fact, forty-five is precisely 60% of seventy-five. This is not the first error which Bloom made in presenting his statistical evidence. In successfully opposing Agfa's earlier motion for summary judgment, Bloom had presented apparently erroneous data which purported to show that in excess of 78% of the management level employees who were laid off were at least forty years of age. See Judge Wolf's Memorandum and Order dated Mar. 9, 1994, at 6 (denying Agfa's motion for summary judgment) (Docket # 28). The claim that in excess of 78% of the terminated management level employees were in the protected class has now been abandoned.

[*7]

B. Analysis

1. The Legal Framework

There is no dispute regarding the legal framework within which the admissibility of Bloom's statistical evidence must be analyzed. n4 Ultimately, Bloom must prove by a preponderance of the evidence that "he would not have been fired but for his age." *LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)* (quoting *Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988))*, cert. denied, *114 S. Ct. 1398 (1994)*. En route to this objective, he must first present a prima facie case. To do so, he must demonstrate that he was at least forty years old; that his job performance met Agfa's legitimate expectations; that he experienced adverse employment action; and, where, as here, the adverse action was pursuant to a reduction in force, that he was replaced by another employee, that Agfa did not treat age neutrally, or that younger persons were retained in the same position. Id. There is no dispute that Bloom has satisfied the first three requirements, in that he was an exemplary employee whose employment was terminated when he was 51 years [*8] old. But Bloom cannot seriously contend that he was "replaced" by another employee n5 or, given that Bloom's entire position was eliminated, that

younger persons were retained in the same position. Thus, the dispositive question with respect to Bloom's prima facie case is whether there is probative evidence that, in selecting persons to be laid off, Agfa did not treat age neutrally. If there is any such evidence, it is Bloom's proffered evidence that 60% of the management-level employees who were laid off were at least forty years old.

n4 The parties agree that Massachusetts law, under which this case was brought, follows federal law under the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C.A. § § 621-634* (West 1985 & Supp. 1994). See *White v. University of Massachusetts, 410 Mass. 553, 557, 574 N.E.2d 356, 358 (1991)* (analysis of discrimination claim is essentially the same under Massachusetts and federal statutes); *Cox v. New England Tel. & Tel. Co., 414 Mass. 375, 382, 607 N.E.2d 1035, 1039 (1993)* (same).

[*9]

n5 Although Bloom's job responsibilities were parceled out to other employees, including, presumably, some who were younger than Bloom, there is no evidence that anyone was hired or reassigned to replace Bloom. Thus, Bloom was not "replaced" in the sense required to satisfy the fourth element of the prima facie case. See *LeBlanc, 6 F.3d at 846;* see also *Earley v. Champion Int'l Corp., 907 F.2d 1077, 1083 (11th Cir. 1990)* (nothing in ADEA requires employer to fire younger employees to make room for older employees whose jobs are eliminated as the result of a reduction in force).

Before considering the pivotal question of whether Bloom's proffered evidence would satisfy this fourth requirement, it should be noted, of course, that even if Bloom had demonstrated a prima facie case, the presumption of discrimination created thereby would vanish immediately upon Agfa's proffer of evidence that Bloom was laid off pursuant to a bona fide reduction in force. See *LeBlanc, 6 F.3d at 842-45.* n6 At that point, Agfa [*10] would be entitled to prevail unless the evidence of age animus presented by Bloom, taken in its entirety, was sufficient to permit a reasonable fact finder to infer that Bloom had been laid off because of his age. See *id. at 845.* Since Bloom is relying on the same statistical evidence to establish both his prima facie case and the sufficiency of the evidence, in its entirety, to create a triable issue, it is apparent that, without the proffered evidence, Bloom's case must fail under either analysis.

n6 Massachusetts courts may here impose a more demanding standard on defendants than is imposed under the paradigm in use in federal courts. See Woods v. Friction Materials, Inc., No. 93-2296, slip op. at 18 (1st Cir. July 29, 1994) (Massachusetts courts apparently require the employer not only to articulate a non-discriminatory reason for its action but also to produce underlying facts in support of that reason). In the present case, the apparently higher Massachusetts standard is academic for two reasons. First, unless and until Bloom has met his initial burden of establishing a prima facie case, Agfa has no burden of production whatsoever under any analytical model. Second, even if it is assumed arguendo that Bloom has established a prima facie case, Agfa has supported its stated reason for terminating Bloom -- economic downsizing -- with background facts pertinent to a two-year, ongoing, company-wide workforce reduction.

[*11]

2. Admissibility of Proffered Evidence

Evidence of a statistical disparity between the treatment of older and younger workers may undoubtedly be of some relevance where there is a question of whether an employer who was reducing the size of its work force used age as a criterion for selecting employees for termination. See, e.g., *LeBlanc, 6 F.3d at 848; Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1114 (1st Cir. 1989);* see also, *Frazier v. Consolidated Rail Corp., 271 U.S. App. D.C. 220, 851 F.2d 1447, 1453 (D.C. Cir. 1988)* ("in disparate treatment cases, where the plaintiff must prove purposeful discrimination, statistics may be useful in making a prima facie case"). For example, if the employer employed a total of one hundred managers, half of whom were at least forty years old, age animus might well be suspected if forty-five of those managers were laid off pursuant to a reduction in force, while only five below the age of forty were terminated.

To say, however, that statistical evidence may be relevant, and thus admissible, in some disparate treatment cases is not to [*12] say that it is relevant and admissible in all such cases. Nor is it to say that, even in those cases where it is relevant and admissible, it is always or, for that matter, ever sufficient in and of itself to establish a discriminatory motive. *LeBlanc, 6 F.3d at 848.* In the above hypothetical, for example, if thirty of the fifty older managers, but only twenty-nine of the fifty younger managers, were laid off, it is doubtful that such

a minor disparity would even be probative of the issue of discriminatory animus, let alone sufficient, without more, to establish it.

It is, however, unnecessary to decide in this case whether, or the circumstances under which, statistics alone can ever be used to prove that an employer discriminated against a particular employee on a prohibited basis. n7 Nor is it necessary in this case to decide whether, or the circumstances under which, raw statistical data is ever admissible to prove discrimination in a disparate treatment case where, as here, no foundation regarding the meaning, reliability, or statistical significance of the data is laid by an expert statistician. See *Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 184 (1st Cir. 1989).* [*13] n8 The reason it is presently unnecessary to decide these difficult questions, either of which might well be dispositive of Bloom's claim, is that there is a more fundamental problem with the proffered statistical evidence: it wholly fails to demonstrate the existence of any disparity between the rates at which protected and unprotected workers were laid off.

n7 To illustrate the issue, assume that a statistician opined that analysis of data showed that a particular pattern of layoffs was consistent with the hypothesis that the employer had taken age into account and that the probability that the observed age distribution had occurred by chance was less than 1%. In such a case, in the absence of rebuttal evidence by the employer, it might be appropriate to permit a jury to infer, on the basis of the unrebutted statistical evidence alone, that the employer used age as a criterion for selection. If, however, the statistician could opine only that the probability that the distribution had occurred by chance was 30%, the evidence might be admissible but, even if unrebutted, insufficient by itself to warrant a finding of discriminatory animus.

[*14]

n8 Compelling arguments can be made that a plaintiff should rarely be permitted to present raw data to a jury or, for that matter, to a judge not trained in statistical analysis. What proper use can a lay factfinder make, for example, of raw data that reveals that four out of ten members of a protected class but only five out of fifteen members of an unprotected class were laid off during a reduction in force? A limited exception might be made where the disparity is so extreme that even a lay person would have no difficulty determining that it would be highly improbable for such disparity to have occurred by chance. This might be the case, for example, if forty-five out of the fifty managers who were at least forty years old, but only five of the fifty managers below forty, were laid off. Of course, there is no evidence that anything like that occurred here.

It is true, of course, that an individual may be a victim of illegal discrimination even though statistical analysis fails to reveal a pattern of disproportionate treatment received by all members of that individual's class in the aggregate. [*15] But it is also true that statistical evidence of discrimination does not tend to prove that an individual was discriminated against unless, as a threshold matter, it reveals that members of the protected class were, in the aggregate, disproportionately affected. To illustrate, if 80% of all workers who were laid off were at least forty years old, there would be no disproportionality and not even a suggestion of age animus if at least 80% of all workers were at least forty years old. And this would be true even though considerably more than half of the workers who were laid off were in the protected class. Conversely, there would be disproportionality and at least a suggestion of age animus if only 10% of workers overall, but 20% of the workers who lost their jobs, were forty or older. And this would be true even though considerably fewer than half the workers who were laid off were in the protected class. See *Hazelwood School Dist. v. United States, 433 U.S. 299, 310-11, 97 S. Ct. 2736, 2743-44, 53 L. Ed. 2d 768 (1977); Barnes v. GenCorp Inc., 896 F.2d 1457, 1466* (6th Cir.), cert. denied, [*16] *498 U.S. 878, 111 S. Ct. 211, 112 L. Ed. 2d 171 (1990).*

Generally speaking, Bloom might have attempted to show the requisite disproportionality in one or both of two ways. First, as was suggested in the preceding paragraph, he could have attempted to show that a disproportionate percentage of the managers who were laid off were forty or older, relative to the overall percentage of managers who were forty or older. In the alternative, Bloom might have attempted to demonstrate that a higher percentage of managers forty or older were laid off than the percentage of workers below age forty that were laid off. There would be disproportionality in this second sense if, for example, 60% of the managers who were at least forty years of age, but only 30% of the managers who were below forty, were laid off. In other words, Bloom might have attempted to show either that a disproportionate percentage of managers who were terminated were at least forty or that a disproportionate percentage of managers who were at least forty were terminated. Bloom's proffered evidence that at least 60%

of the managers who were laid off were at least forty [*17] was apparently intended to show the former, but in fact it demonstrated neither.

To say, as Bloom did, that 60% of the managers who were laid off were at least forty is to tell only half a story. In order to demonstrate disproportionality, Bloom would also have to show that this percentage exceeded the percentage of all managers who were forty or above, but this he did not and, clearly, was not prepared to do. Instead, it was apparently his intention to ask the jury to infer from the arithmetic fact that 60% exceeds 50% that older managers must have been laid off in disproportionately large numbers. But any such inference would be speculative, because it would assume that, before the layoffs, there were equal percentages of managers above and below the age of forty. There is no reason to expect such a condition to exist, however, especially since employees tend to receive promotions to management positions only after they accrue a number of years of experience. More to the point, it is certainly not so unlikely that more than half the managers would be at least forty that a finding of disproportionality would be warranted based solely on the fact that somewhat more than half the managers [*18] who were laid off were at least forty. n9

n9 As noted, even if Bloom were prepared to show that only half of all managers were at least forty, as compared with the 60% in that category who were laid off, it is doubtful that this evidence would even be admissible, let alone sufficient to support a verdict, without a statistician's expert opinion that this seemingly modest level of disproportionality was statistically significant.

The proffered evidence also fails to demonstrate disproportionality in the second sense. To show that a higher percentage of older managers than of younger managers was laid off, Bloom would have to show how many managers were in each category before the layoffs began and how many managers within each category were laid off. His proffered evidence that 45 older managers and 30 younger managers were laid off thus again tells only half a story. If at the start of the process, for example, 135 managers were at least age forty and 90 managers were less than forty, the respective percentages of [*19] laid off managers in these two categories would be an identical 33%. Again, therefore, in order to infer disproportionality based solely on the evidence proffered by Bloom, the jury would have to engage in impermissible speculation about the numbers of older and younger managers that comprised the work force before any reduction. See *Connell v. Bank of Boston, 924 F.2d 1169, 1177* (1st Cir.) (evidence presented, including statistical evidence, must be sufficient for factfinder "reasonably to infer" that the defendant employer's actions were motivated by age animus), cert. denied, *501 U.S. 1218, 111 S. Ct. 2828, 115 L. Ed. 2d 997 (1991).*

Because the proffered statistical evidence fails to demonstrate disproportionality in any relevant sense, it is inadmissible. In the alternative, even if it were admissible, the entirety of the evidence would not demonstrate any disparity of treatment between older and younger managers and thus would not warrant a finding by the jury of age animus. Agfa is therefore entitled to judgment as a matter of law. Cf. *Frazier, 851 F.2d at 1454* [*20] (plaintiffs failed to make out a prima facie case of discrimination where their "statistics did not tell a sufficiently complete story for the district court to give them any weight in its consideration . . .").

Bloom musters five arguments in response to the foregoing analysis. Each is without merit.

First, Bloom argues that Agfa's objections to the proferred statistical evidence go to its weight, not to its admissibility or sufficiency. For reasons already stated, however, without additional information that Bloom has failed to provide, the jury could return a verdict for him only on the basis of impermissible speculation. The evidence is thus inadmissible, but, even if it were admitted, it would not support a verdict in Bloom's favor.

Second, Bloom suggests that, once he shows that more than half the terminated managers were in the protected class, the burden shifts to Agfa to come forward with evidence to show that at least an equal percentage of all managers were in that same class. Bloom is again mistaken. The burden is on the plaintiff in an age discrimination case to present evidence of age animus, and, by itself, evidence that more than half the managers who were laid off [*21] were at least age forty does not cross the threshold. For these purposes, what matters is disproportionality, and until Bloom carries his burden of presenting some evidence from which its existence can permissibly be inferred, Agfa is not required to present any evidence.

Third, Bloom argues that his case is similar to *Hebert v. Mohawk Rubber Co., 872 F.2d 1104 (1st Cir. 1989),* where the plaintiff was able to stave off summary judgment by proffering evidence that 76% of the managers in the protected class were laid off. Mohawk is distinguishable in at least three respects, however. First, in Mohawk, plaintiff was not relying entirely on statistical evidence to show that his employer's stated reason for terminating him was pretextual. See *id. at 1115.* n10 Second, the relevant percentage there was not 60%, but 76%, a figure the court characterized as "rather startling." *Id. at 1114.* Third, and perhaps most important, the relevant percentage there was not of the terminated workers

who were in the protected class, but of workers in the protected class who were terminated. On that basis, [*22] given that 76% of older workers were terminated, there would in fact have been disproportionality in Mohawk unless a similarly startling 76% of younger workers were also terminated. Since it is fairly clear that nothing approaching 76% of all younger workers were terminated, n11 it can indeed be inferred that a disproportionately high percentage of older workers were laid off. For reasons previously stated, to draw any such inference here would necessarily be to engage in impermissible speculation.

n10 Presumably, Mohawk would be decided the same way even after the Supreme Court's decision in *St. Mary's Honor Center v. Hicks, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993).*

n11 Although the point is not explicitly discussed in the court's opinion, it appears likely that the company did not lay off as many as 76% of its younger employees. The court's only indication of the number of such employees laid off is its statement that, during the relevant period, seventeen employees below the age of forty were terminated. See *Mohawk, 872 F.2d at 1108.* If that figure indeed represents the number of younger workers who were fired, then fewer than 76% of all employees below the age of forty would have been laid off except in the unlikely event the company -- from all appearances a substantial industrial enterprise -- had fewer than twenty-three such employees before the layoffs began.

[*23]

Fourth, relying on the "law of the case" doctrine, Bloom argues that he is entitled to a jury trial on the merits because he survived a previous motion by Agfa for summary judgment. Bloom, however, misconstrues the doctrine. As recently explained by the First Circuit, "interlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case." *Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994).* Moreover, and in any event, Judge Wolf's denial of Agfa's previous motion for summary judgment was based on Bloom's now-abandoned claim that "more than 78% of the managers involuntarily terminated were over the age of forty." Memorandum and Order dated Mar. 9, 1994, at 6. Further, Judge Wolf explicitly recognized that even a percentage as high as 78% "might lose much of its significance" if "the management group subject to termination was primarily composed of individuals over the age of forty." Id. at 13. n12 For all these reasons, the court's denial of a previous motion by Agfa for summary judgment does not now entitle Bloom to present the proffered evidence at a trial on the merits.

n12 Also, it should again be noted that, for reasons apparently not argued at the time, the statistical evidence in the Mohawk case, which figured so prominently in Bloom's opposition to Agfa's first motion for summary judgment, was qualitatively different from the statistical evidence proffered by Bloom here. The data which the court in Mohawk found "rather startling" showed the percentage of older workers who were laid off, *Mohawk, 872 F.2d at 1114,* while Bloom's data here shows the percentage of laid off workers who were older. It would not at all be startling if 60% of the managers who were laid off by Agfa were at least forty, especially since it can be expected that management personnel, on average, will be older than nonmanagement personnel.

[*24]

Finally, Bloom argues that the court should continue the trial and grant his recently filed motion to compel Agfa to respond to his four-year-old interrogatory calling for information that he mistakenly believes will cure the defects in his proffer. Some background is in order.

Sometime in 1990, Bloom served a set of interrogatories on Agfa. Interrogatory 14 requested a breakdown of Agfa's work force, in the aggregate, by certain age categories. Agfa timely objected; Bloom promptly moved to compel; Agfa opposed the motion on the ground that Bloom had failed to confer as required by local rule; and on July 23, 1990, Magistrate Judge Bowler entered an order denying the motion to compel. Also, on July 5, 1990, Magistrate Judge Bowler entered an order establishing a discovery cutoff date of January 4, 1991 (Docket # 10). There matters stood, until Bloom, without ever in the interim having attempted to confer, renewed his motion to compel as part of his package of filings on May 20, 1994.

Against this background and for several reasons, Bloom's motions for continuance and to compel are denied. First, the motions are untimely. Bloom offers no reason whatsoever for his having waited all [*25] these years, indeed, until after trial was to have commenced, before taking any action to obtain the information he now seeks. Since he himself sought the information four years ago, it is no excuse for him to say that he did not realize its importance until the court granted Agfa's motion in limine on the morning of trial. Second, since

Bloom never even attempted to cure the problem that caused Magistrate Judge Bowler to deny his prior motion to compel, there is no reason why such prior order should not be given continuing effect. Finally, and perhaps most importantly, the information the interrogatory seeks would not, even if it were available, cure the problem with Bloom's proffer. The problem, as noted, is that Bloom proffered evidence of the percentage of laid-off managers who were at least forty years old without also proffering evidence of the percentage of all managers who were at least forty years old. The information Bloom now seeks by way of interrogatory response is the number of all employees -- management and non-management -- who were at least forty years old. To compare such information with the percentage of older management level employees who were laid off would [*26] be a meaningless comparison of apples and oranges. n13

n13 Bloom mistakenly states in his Memorandum (Docket # 47) that the court, "sua sponte, ruled that the [proffered evidence] could not be offered . . . unless it was accompanied by the breakdown by age of the entire Agfa work force at that time." Not only was the court's ruling upon a motion by Agfa and thus not sua sponte, but the court did not indicate that the problem was the absence of a "breakdown by age of the entire Agfa work force." (Emphasis added). As noted, Bloom would like to show that the percentage of older managers laid off (60%) exceeded the percentage of older managers overall (percentage unknown). Therefore, the information which Bloom needs to fill the gap in his presentation is the percentage of all managers (not all workers) who were at least forty years old. Interrogatory 14 does not request such information.

### III. CONCLUSION AND ORDER

For all the above reasons, Plaintiff's Motion for Reconsideration (Docket # 46), [*27] Plaintiff's Motion to Continue (Docket # 48), and Plaintiff's Motion to Compel (Docket # 49) are all DENIED; the evidence proffered by Bloom regarding the percentage of managers laid off who were age forty or older is excluded; and judgment shall enter in Agfa's favor.

Zachary R. Karol

UNITED STATES MAGISTRATE JUDGE

LEXSEE

**HARVEY BLOOM, Plaintiff, Appellant, v. AGFA CORPORATION, Defendant, Appellee.**

**No. 94-2033**

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

*1995 U.S. App. LEXIS 8983*

**April 18, 1995 , Decided**

**NOTICE:** [*1] RULES OF THE FIRST CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *52 F.3d 309, 1995 U.S. App. LEXIS 17242.*

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS Hon. Zachary R. Karol, U.S. Magistrate Judge.

**COUNSEL:** Donald L. Conn, Jr., with whom Conn, Austin, Conn & Senior was on brief, for appellant.

John F. Welsh, with whom Marie H. Bowen and Testa, Hurwitz & Thibeault were on brief, for appellee.

**JUDGES:** Before Selya, Circuit Judge, Bownes, Senior Circuit Judge, and Boudin, Circuit Judge.

**OPINION:** Per Curiam. We have carefully reviewed the briefs and the record in this case, and have given due consideration to the matters raised at oral argument. Because we agree, for the most part, with the magistrate judge's thoughtful opinion, see Bloom v. Agfa Corp., No. 90-10856- *ZRK, 1994 WL 548050* (D. Mass. Aug. 10, 1994), we affirm the judgment below substantially on the basis of that opinion. We add only two brief comments.

First, plaintiff concedes that if his proffered "statistical evidence" lacked probative force, he had no other competent proof of an age-based [*2] animus. On reflection, we are persuaded that this evidence is not evidence at all. To say that a reduction in force discriminated against older workers merely because 60% of the managers who were laid off were over 40 years of age proves nothing of consequence about age discrimination in the absence of complementary evidence as to the ages of all the managers employed in the unit under analysis. See *LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993)* (noting in a disparate treatment case that appellant's statistical evidence was flawed inasmuch as it failed to provide important information anent the applicant pool), cert. denied, *128 L. Ed. 2d 72, 114 S. Ct. 1398 (1994).*

We think this proposition has particular cogency where, as here, logic suggests that the universe of managers might well be weighted toward the protected class. After all, on average, one would expect managers in a large corporation to be experienced hands and, thus, older rather than younger. Given this logical expectation, plaintiff's incomplete equation, without more, does not supply a sufficient predicate on which to found a reasonable inference of age-based animus.

Second, we do not believe that the district [*3] court abused its discretion in denying plaintiff's tardy motion to compel discovery. See generally *Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989)* (discussing trial court's broad discretion in respect to discovery orders). Plaintiff let three years lapse after the court denied his original motion to compel without prejudice, and only renewed the motion after the case had been reached for trial. Parties who, like Bloom, have easily foreseeable needs for pretrial discovery cannot wait until the district court is performing rites of interment before attempting to secure necessary facts. See, e.g., *Fusco v. Gen. Motors Corp., 11 F.3d 259, 266 (1st Cir. 1993)* (affirming district court's denial of appellant's eve-of-trial motion to compel production when appellant knew a year earlier that appellee intended to offer evidence on the issue); *Medeiros v. United States, 621 F.2d 468, 470 (1st Cir. 1980)* (affirming dismissal for lack of prosecution when record reflected "unreasonable delay" by plaintiff in conducting pretrial discovery). In this instance, plaintiff's effort was too little too late.

We need go no further. It is clear beyond [*4] per-adventure that the trial court did not err either in ordering judgment for the defendant as a matter of law based on plaintiff's opening statement or in denying plaintiff's belated motion to reopen discovery. Because this appeal does not yield a substantial question of law or fact, we summarily affirm the judgment below. See 1st Cir. R. 27.1.

**Affirmed.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

-----------------------------------------------------------X

**WILLIAM J. BURELLE,** :

: 

**Plaintiff,** :

:

**- against -** : **C.A. No.: 04-414 S**

:

**QUEBECOR WORLD PAWTUCKET f/k/a** :
**QUEBECOR WORLD PACKAGING** :
**GRAPHICS; QUEBECOR WORLD PRINTING:**
**(USA) INC.; and ERNEST MASSE,** :

:

**Defendants.** :

-----------------------------------------------------------X

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the within Declaration Of Anthony J. DiOrio, Esq. has been served by mailing a copy of the same, via Federal Express, this 3rd day of April 2006, to:

Melissa Horne, Esq.
Wingrad, Shine & Zacks, P.C.
123 Dyer Street
Providence, Rhode Island 02903
*Attorney for Plaintiff*

Joseph J. Altieri, Esq.
Joseph J. Altieri, Ltd.
301 Metro Center Blvd., Suite 102
Warwick, Rhode Island 02886
*Attorney for Defendant Masse*

_______________________
Anthony J. DiOrio, Esq.